1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                           **CENTRAL DISTRICT OF CALIFORNIA**

10

11   EDWARD MUNOZ,                    )   NO. CV 11-02607 SS
                                      )
12                  Plaintiff,        )
                                      )
13           v.                       )
                                      )   **MEMORANDUM DECISION AND ORDER**
14   MICHAEL J. ASTRUE,               )
     Commissioner of the Social       )
15   Security Administration,         )
                                      )
16                  Defendant.        )
     _____)
17

18                                    **I.**

19                               **INTRODUCTION**

20

21       Edward Munoz ("Plaintiff") brings this action seeking to overturn

22   the decision of the Commissioner of the Social Security Administration

23   (hereinafter the "Commissioner" or the "Agency") denying his

24   applications for Social Security Income benefits ("SSI") and Disability

25   Insurance Benefits ("DIB").  The parties consented, pursuant to 28

26   U.S.C. § 636©, to the jurisdiction of the undersigned United States

27   Magistrate Judge.  For the reasons stated below, the decision of the

28   Agency is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff applied for SSI and DIB on September 25, 2007 alleging a disability onset date of June 1, 2005. (Administrative Record ("AR") 75-77). The Agency denied Plaintiff's initial application for DIB and SSI on February 5, 2008, (AR 51), and denied reconsideration on June 18, 2008. (AR 57). Plaintiff then requested a hearing, (AR 64), which was held on January 8, 2009 before an Administrative Law Judge ("ALJ"), (AR 69), where Plaintiff appeared with counsel and testified. (AR 25, 28-42). On February 25, 2009, the ALJ denied benefits. (AR 11-24). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 8, 2011, (AR 1), making the ALJ's decision the final decision of the Agency. Plaintiff then filed the instant action.

## III.

### FACTUAL BACKGROUND

Plaintiff was 47 years old at the time of his alleged disability onset date. (AR 75). He can speak, understand, and write in English. (AR 90). Additionally, Plaintiff can dress and bathe himself as well as garden and perform woodworking. (AR 262).

**A.   Plaintiff's Medical History**

Plaintiff has a history of high blood pressure, anemia, hepatitis C, as well as cirrhosis secondary to alcohol use for 20 years. (AR 192,

2

253-54, 261, 296, 434).  Additionally, Plaintiff has been treated for hepatitis A, cataract in his right eye, and a bullet wound in his elbow. (Id.).  Plaintiff has a long history of heroin, marijuana and alcohol abuse.  (AR 192-93, 196, 211, 249, 253, 254, 262, 264, 277, 300, 457).

The majority of Plaintiff's medical records derive from visits to LAC-USC Medical Center from June 2007 to July 2009.  (AR 183-244, 289-324, 419-510).  During that time, Plaintiff frequently sought psychological treatment from Dr. Rongey.  On March 13, 2008, Dr. Rongey noted Plaintiff's "increased forgetfulness and slight asterixis," and recommended lactulose for treatment.  (AR 308, 473).  Subsequently, Dr. Rongey opined that Plaintiff's problems with forgetfulness "may be secondary to long standing alcohol abuse or . . . sleep disturbances." (AR 300, 466).  On November 6, 2008, Dr. Rongey noted improved mentation after starting lactulose.  (AR 296, 462).

On April 4, 2009, Dr. Rongey noted that Plaintiff had a recent lapse in sobriety noting that Plaintiff "began to drink alcohol again," and began "using vicodin and two weeks ago used Marijuana."  (AR 457). Plaintiff further "resumed use of injecting heroin."  (Id.).  Dr. Rongey also noted that Plaintiff's March "tox screen returned positive for opiates [and] amphetamines."  (Id.)  During a follow up visit, Dr. Chan again noted improved mentation with lactulose and noted that Plaintiff has been "clean since March 2009 except for Vicodin for arm pain."  (AR 450).

3

**B.     Psychiatric Examinations**

On January 7, 2008, Dr. Rosa Colonna, a consultative clinical psychologist, conducted a complete psychological evaluation. (AR 260-65). Plaintiff confided that he did not have a prior history of mental illness. (AR 261). Plaintiff also stated that he "used heroin and alcohol and stopped using alcohol several months prior to the examination and heroin two years ago." (AR 262). Based on test results and clinical data, Dr. Colonna diagnosed Plaintiff with polysubstance dependence in remission from self-reporting, personality disorder with antisocial traits, and assessed Plaintiff with a GAF score of 60. (AR 264). Dr. Colonna also noted that Plaintiff's "overall cognitive ability appears to be low average." (Id.). Specifically, Plaintiff "would be able to understand, remember and carry out short, simplistic instructions without difficulty" and be able to "make simplistic work-related decisions without special supervision." (Id.). Additionally, she concluded that Plaintiff "would be able to interact appropriately with supervisors, coworkers and peers" and "appear[s] able to manage finances on his own." (Id.). Dr. Colonna recommended a sober lifestyle free of drug use. (Id.).

On January 29, 2008, Dr. Elizabeth Harrison, completed a Psychiatric Review Technique report. (AR 271). Dr. Harrison determined that Plaintiff had a polysubstance abuse disorder in remission. (AR 277). Further, she asserted that Plaintiff had mild limitations in social functioning and daily activities, and moderate limitations in maintaining concentration, persistence, or pace without any episodes of

decompensation.  (AR 279).  According to Dr. Harrison, Plaintiff had no limitation in his ability to understand and perform simple instructions, and he could work without special supervision.  (AR 282).  Further, Dr. Harrison asserted that Plaintiff was not significantly limited in social interactions related to work, and that Plaintiff could respond appropriately to changes in the work setting.  (AR 283).

**C.   <u>Vocational Expert's Testimony</u>**

Ms. Jane Halle, a vocational expert, testified at Plaintiff's 2009 hearing.  (AR 42-45).  Ms. Halle testified that a person similarly situated to Plaintiff who is limited to light work and prevented from performing work requiring binocular vision would not be able to perform Plaintiff's past relevant work.  (AR 43-44).  However, she confirmed that such a person could perform unskilled work given those restrictions, and that there were available unskilled jobs in the local and national economy.  (AR 44).  Moreover, Ms. Halle asserted there would be "very minimal" adjustment in learning how to perform these jobs.  (AR 45).

**D.   <u>Plaintiff's Testimony</u>**

At the 2009 hearing, Plaintiff testified that he worked for Roger Floyd doing air conditioning and refrigeration repair for many years. (AR 30).  He frequently carried 100 pound bags of cement and worked in tight spaces.  (AR 30-31).  Subsequently, Plaintiff took a job as a caretaker for a friend in 2006.  (AR 29).  He lives in his own house,

but his mom and girlfriend prepare his meals and clean for him.  (AR 32).  Plaintiff confirmed that he had abused heroin as recent as 2007 but testified he is no longer using heroin.  (AR 33).  Additionally, Plaintiff confirmed that he also abused alcohol.  (AR 34).  When asked why he could no longer work, Plaintiff asserted that he "started slowing down and then [get] real sleepy and lazy on the job. . . ." (AR 34-35).  Further, Plaintiff claimed he cannot stand too long without swelling of his ankles.  (AR 35).  According to Plaintiff, he is constantly fatigued because of his hepatitis C condition.  (AR 37).  Plaintiff asserted that he takes medication for "forgetfulness", and that his vision is impaired in his right eye from a cataract.  (AR 41).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 416.910.

the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)    Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)    Is the claimant capable of performing h[er] past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)    Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

7

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled. (AR 14-24). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2005. (AR 16). At step two, the ALJ found that Plaintiff had liver disease (alcoholic cirrhosis), possible hiatal hernia, hypertension, a systolic ejection heart murmur, viral hepatitis A and C, obesity (being 70 inches tall and weighing 222 pounds), subjective complaints of decreased visual acuity in the right eye, and

polysubstance abuse (alcohol, opioid, cannabis, heroin, etc.) reportedly in remission.  (Id.).

However, the ALJ determined that Plaintiff's mental impairment "does not cause more than minimal limitations in the [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe."  (AR 17).   Specifically, the four functional areas for evaluating mental disorders pointed to a finding of non-severe.  (Id.). According to the ALJ, Plaintiff had only mild limitations in daily living, social functioning, and concentration, and had "no episodes of decompensation."  (Id.).

At step three, the ALJ determined that Plaintiff did not have an impairment that meets or equals a listed impairment.  (Id.).  At step four, the ALJ found that Plaintiff could perform light work other than work requiring binocular vision.  (AR 19).

Ultimately, the ALJ determined that Plaintiff could not perform any of his past relevant work.  (Id.).  However at step five, he found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform."  (AR 23). The ALJ relied on a vocational expert's ("VE") testimony which confirmed that an "individual with claimant's age, education, work experience, and residual functional capacity . . . would be able to perform the requirements of representative occupations such as Ticket Taker . . .

Floor Worker . . . and Basket Filler."  (Id.).  Accordingly, the ALJ determined that Plaintiff was not disabled.  (Id.).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21.

**VII.**

**DISCUSSION**

**A.    The ALJ Did Not Err By Finding That Plaintiff Did Not Have A Non-Severe Mental Impairment**

Plaintiff argues that the ALJ erred by finding that Plaintiff's mental impairment was non-severe. (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo.") at 5). This Court disagrees.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[2] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998)(citing 20 C.F.R. § 416.920a)(per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d).

---

[2] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed assessment. Social Security Ruling 96-8P, 1996 WL 374184 at * 4.

Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920a(d)(2).  Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

1.   **The ALJ Did Not Err In Finding That Plaintiff Did Not Have A Medically Determinable Mental Impairment of An Organic Mental, Borderline Intellectual Functioning and Antisocial Traits Disorder**

The ALJ determined that Plaintiff only had a medically determinable mental impairment of polysubstance abuse (alcohol, opiod, cannabis, heroin, etc.), reportedly in remission, which the ALJ subsequently found to be non-severe.  (AR 17).  However, Plaintiff argues that the ALJ failed to find that he also suffered mental impairments of either an organic mental disorder or a personality disorder.  (See Complaint Memo. at 5-8).  The Court finds the record fails to support Plaintiff's contentions.

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 404.908; see also Ukolov v. Barnhart, 420 F.3d

12

1  1002, 1005 (9th Cir. 2005) (noting that the existence of a medically
2  determinable physical or mental impairment may only be established with
3  objective medical findings) (citing Social Security Ruling 96-4p, 1996
4  WL 374187 at *1-2).

5

6       Here, the ALJ properly rejected State Agency's reviewing
7  psychiatrist Dr. Harrison's assessment that Plaintiff had an organic
8  mental disorder because the finding was based "on the I.Q. scores by Dr.
9  Colonna," yet Dr. Colonna did not diagnose Plaintiff with any kind of
10 organic mental disorder.  (AR 18, 264).  An ALJ may reject testimony
11 when it conflicts with the medical evidence.  See Bayliss v. Barnhart,
12 427 F.3d 1211, 1218 (9th Cir. 1993) (stating that inconsistency with
13 medical evidence was a germane reason for rejecting certain testimony).
14 The ALJ also went further and rejected Dr. Colonna's opinion because it
15 was a "one-time evaluation" and Plaintiff was "not entirely credible and
16 was still actively abusing polysubstances at least a few months before
17 Dr. Colonna's evaluation."  (AR 18).  Dr. Colonna's own notes, as well
18 as other medical evidence in the record, indicate that Plaintiff stopped
19 using alcohol and/or heroin just a few months prior to the examination.
20 (AR 193, 196, 211, 262).  Thus, because the State Agency psychiatrist's
21 assessment of an organic mental disorder was not sufficiently supported
22 by objective medical evidence in the record, the ALJ properly rejected
23 it. See, e.g., Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600
24 (9th Cir. 1999) (A nonexamining physician's opinion can constitute
25 substantial evidence if it is supported by other evidence in the
26 record.).

27

28

1        Next, the ALJ also rejected Dr. Harrison's assessment that
2   Plaintiff suffered from "borderline intellectual functioning" or "BIF".
3   (AR 18, 281).  The ALJ reasoned that Dr. Harrison's assessment was based
4   on "speculation in that [Dr. Harrison] noted that [Plaintiff] 'appears'
5   to have borderline intellectual functioning."  (Id.).  To the extent
6   that evidence is inconsistent, conflicting, or ambiguous, it is the
7   responsibility of the ALJ to resolve any conflicts and ambiguity.
8   Morgan, 169 F.3d at 603.  Because the ALJ has authority to interpret
9   ambiguous medical opinions, the Court must defer to the ALJ's decision.
10  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Here, the ALJ's
11  interpretation was reasonable particularly because there was no other
12  objective evidence in the record indicating that Plaintiff suffered from
13  borderline intellectual functioning.

14

15       Finally, the ALJ rejected Dr. Colonna and Dr. Harrison's diagnosis
16  of a personality disorder for several reasons.  (AR 18).  The ALJ
17  rejected Dr. Colonna's diagnosis of "Personality Disorder, Antisocial
18  Traits" because the doctor based her diagnosis on Plaintiff's self-
19  reported subjective history.  The ALJ previously found Plaintiff not
20  credible based on his drug abuse and inconsistent reports of when he
21  last used drugs.  (AR 21).  Because the ALJ found Plaintiff not
22  credible, the ALJ properly rejected Dr. Colonna's findings which largely
23  depended on Plaintiff's own self-reported symptoms.  Fair v. Bowen, 885
24  F.2d 597, 605 (9th Cir. 1989) (having discounted plaintiff's
25  credibility, ALJ properly discredited treating physician's opinion based
26  on plaintiff's subjective symptoms).  Further, the ALJ rejected the
27  State Agency psychiatrist's assessment of a personality disorder because
28

                                14

Dr. Harrison related the "personality disorder to [Plaintiff's] polysubstance abuse," i.e., Dr. Harrison considered Plaintiff's "personality disorder" to be a "substance addiction disorder," so there was no separate personality disorder finding. (AR 18, 277). Finally, the ALJ rejected Dr. Colonna and the State Agency psychiatrist's diagnosis because it was not supported by objective medical evidence in the record. Specifically, the ALJ noted that the record contains "no longitudinal documentary record to substantiate such a diagnosis" and there is no "mention [of] any findings to support the diagnosis." (AR 18). Indeed, Dr. Colonna's own notes suggest a contrary finding, i.e., Dr. Colonna opines that Plaintiff "is socially appropriate with this examiner. He would be able to interact appropriately with supervisors, coworkers and peers." (AR 264); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2005) (an ALJ can reject a treating physician's assessment of limitations when the physician's clinical notes and other recorded observations regarding Plaintiff's capabilities contradict the assessment).

In sum, the ALJ's conclusions were supported by substantial evidence. Accordingly, the ALJ properly determined that Plaintiff did not have mental impairments of an organic mental, borderline intellectual functioning or antisocial traits disorder.

15

2.   **The ALJ Properly Found That Plaintiff's Medically Determinable Impairment Of Polysubstance Abuse, In Remission Was Not Severe**

The ALJ found that Plaintiff had a medically determinable mental impairment of polysubstance abuse (alcohol, opiod, cannbis, heroin, etc.), reportedly in remission, but that it did not "cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe." (AR 17). However, the Plaintiff contends that the ALJ erred in finding his mental impairment was not severe. (Complaint Mem. at 5-8).

In determining that Plaintiff's mental impairment was not severe, the ALJ properly followed the regulations for evaluating mental impairments as follows:

The ALJ first found that Plaintiff's mental impairment caused only mild restriction in his activities of daily living, citing to State Agency psychiatrists' opinions (Drs. Harrison and Morris) that Plaintiff had only a mild restriction in this particular functional area. (AR 17, 279, 287). The ALJ found their conclusions to be consistent with Plaintiff's "presentation and demonstrated abilities for consultative, examiners and treating sources, and [Plaintiff's] presentation at the hearing." (AR 17). Thus, the State Agency psychiatrists' opinions constituted substantial evidence supporting the ALJ's decision because they were consistent with the opinion of examining psychiatrist Dr. Colonna, as well as the other medical evidence in the record. See

Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

The ALJ also similarly and properly found that Plaintiff's social functioning was only mildly restricted because it was supported by the State Agency psychiatrists, as well as examining psychologist Dr. Colonna. (AR 17, 264, 279).

The ALJ found that Plaintiff only had mild difficulties with concentration, persistence and pace. (AR 17). The ALJ rejected the State Agency psychiatrists' opinion that Plaintiff had moderate difficulties in this particular functional area because it was "not substantiated by Dr. Colonna's findings or opinion." (Id.). Indeed, Dr. Colonna specifically found that Plaintiff's "attention and concentration span are mildly diminished." (AR 262). An examining physician's opinion is generally afforded more weight than a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citation omitted). Further, the ALJ was entitled to resolve conflicting medical evidence at his discretion. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) ("The ALJ is responsible for . . . resolving conflicts in medical testimony."). Thus, substantial

1  evidence supports the ALJ's finding that Plaintiff only had mild
2  difficulties with concentration, persistence and pace.

3

4      Finally, the ALJ properly found that Plaintiff had experienced no
5  episodes of decompensation of an extended duration.  The ALJ based his
6  conclusion on the uncontroverted State Agency psychiatrists' opinions
7  and the lack of longitudinal medical evidence to substantiate any such
8  episodes.  (AR 17).

9

10     Thus, the ALJ properly found Plaintiff's mental impairment of
11 polysubstance abuse in remission non-severe because he supported his
12 findings by reference to the medical records and adequately addressed
13 the steps of the Secretary's regulations governing mental impairments.

14

15     Moreover, the ALJ properly determined that Plaintiff's mental
16 impairment did not cause more than a minimal limitation in Plaintiff's
17 ability to do basic work activities.  (AR 21).  Here, the ALJ
18 extensively discussed Plaintiff's mental impairment at Step 4 of the
19 analysis finding that Plaintiff's mental impairment resulted in "no
20 work-related limitations." (Id.).  In support of his finding, the ALJ
21 rejected Dr. Colonna's opinion that Plaintiff had only "mild inability
22 to understand, remember, and carry out detailed instructions" because
23 Dr. Colonna's finding was "based on a one-time examination of
24 [Plaintiff] who is not entirely credible and who had only recently
25 stop[ed] using illicit drugs." (Id.).  The ALJ also rejected Dr.
26 Colonna's opinion noting that Plaintiff's treating physicians' (Drs.
27 Roberto and Rongey from LAC-USC Medical Center) reports indicated that

28

by November 2008, Plaintiff reported that his medication improved his mentation, and that Plaintiff had no cognitive barriers to learning. (AR 293, 296). Moreover, contrary to Plaintiff's contention that the ALJ failed to consider Dr. Rongey's opinion (Complaint Mem. at 6-7), the ALJ considered and properly rejected Dr. Rogney's opinion that Plaintiff suffered from "increased forgetfulness" because Plaintiff's more recent medical records from Dr. Rongey indicated that Plaintiff's medication improved his mentation. (AR 21). Finally, the ALJ rejected Dr. Colonna's opinion because there was nothing in the "longitudinal progress notes from treating sources to show that they had any significant concerns regarding the [Plaintiff's] cognitive functioning." (AR 21-22). Indeed, as noted above Plaintiff's treating physician opined that Plaintiff had no cognitive barriers to learning as of November 2008. (AR 293). Thus, the ALJ properly rejected Dr. Colonna's opinion with several specific and legitimate reasons. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding the rejection of a medical opinion was proper where the ALJ discussed in detail how the opinion was inconsistent with the plaintiff's medical history).

**B.   Even Assuming The ALJ Erred By Finding That Plaintiff Had A Non-Severe Mental Impairment, Any Error Was Harmless**

First, even assuming the ALJ erred at step two by determining that Plaintiff's impairment was non-severe, any error was harmless because, as discussed above, the ALJ accounted for Plaintiff's mental limitations, as demonstrated in the record, when the ALJ assessed

1   Plaintiff's RFC.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)
2   (holding that when an ALJ accounts for resulting limitations later in
3   the sequential evaluation process, any error in finding the impairment
4   non-severe at step two is harmless).

5

6       Next, had the ALJ included the most restrictive limitations based
7   on Drs. Colonna and Harrison's finding that Plaintiff should be limited
8   to simple work, it would not have impacted the validity of the ALJ's
9   ultimate decision.  Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d
10  1155, 1162 (9th Cir. 2008) (determining that errors that do not impact
11  the validity of the ALJ's ultimate decision are harmless.); see also
12  Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2005)
13  (holding that  an error is harmless if it is "irrelevant to the ALJ's
14  ultimate disability conclusion.").

15

16      Although the ALJ did not ultimately impose any mental limitations
17  in Plaintiff's RFC and did not impose any mental limitations in his
18  hypothetical to the vocational expert, the ALJ asked the VE if, based
19  on the hypothetical, there would be any unskilled work this individual
20  could perform.  (AR 43-44).  The VE responded that the jobs that "would
21  meet the hypothetical profile in the light work range would be light
22  unskilled." (AR 44).  The VE testified that Plaintiff could perform the
23  job of ticket taker, DOT 344.667-010, light unskilled work SVP 2; floor
24  worker, DOT 739.687-098, light unskilled work SVP1; and basket filler,
25  DOT 529.687-010, light unskilled work SVP 1.  (Id.).

26

27

28

Unskilled work requires "little or no judgment to do simple duties that can be learned in a short period of time." 20 C.F.R. § 404.1568(a); see also SSR 85-15, 1985 WL 56857 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities . . . to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."). Further, reasoning level two is also compatible with an RFC restricted to simple tasks. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning consistent with limitation to simple and routine tasks); Lara v. Astrue, 305 Fed. App'x 324, 326 (9th Cir. 2008) (someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication beyond reasoning level one).

Thus, the record supports the ALJ's finding that Plaintiff could perform unskilled work at either the reasoning level of one or two. Specifically, Dr. Colonna determined that Plaintiff "would be able to understand, remember and carry out, simplistic instructions without difficulty" and be able to "make simplistic work-related decisions without special supervision." (AR 264). Dr. Colonna also concluded that Plaintiff "would be able to interact appropriately with supervisors, coworkers and peers." (Id.). Moreover, Dr. Harrison concluded that Plaintiff had only mild limitations in social functioning and daily activities without any episodes of decompensation. (AR 279). While Dr. Harrison opined that Plaintiff had moderate limitations in maintaining concentration, (id.), Dr. Rogney noted that Plaintiff's mentation improved after starting lactulose. (AR 296). Plaintiff also

21

testified that he experienced improvement after taking medication for his "forgetfulness." (AR 41). Additionally, Dr. Harrison concluded that Plaintiff could respond appropriately to changes in the work environment. (AR 283). Therefore, the record supports the ALJ's finding that if he "accepted the more liberal opinions of the State Agency consultative psychiatrists and found that [Plaintiff] is also limited to simple, which is unskilled, work, the ultimate outcome in this case would remain the same, because the vocational expert identified unskilled work in her testimony that [Plaintiff] remains able to perform." (AR 22); Carmickle, 533 F.3d at 1162.

Furthermore, additional records submitted to the Appeals Council are mostly duplicative of records already submitted to the ALJ relating to treatment from Dr. Rogney. (See, e.g., AR 308, 473). New records merely highlight Dr. Rogney's concern over Plaintiff's continued drug use, (AR 457), or repeat the same diagnosis or information already presented to the ALJ. Because these records do not impact the finding that Plaintiff could perform unskilled jobs, the ALJ's ultimate disability determination remains valid. Accordingly, the Court AFFIRMS the ALJ's determination.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 9, 2011

_____
/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[3]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

23